**RICHMAN LAW GROUP**
Kim E. Richman
81 Prospect Street
Brooklyn, New York 11201
Telephone:    (212) 687-8291
Facsimile:    (212) 687-8292
Email:        krichman@richmanlawgroup.com

D. Greg Blankinship
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone:    (914) 298-3290
Email:        gblankinship@fbfglaw.com
              tgarber@fbfglaw.com

*Counsel for Plaintiff Alexandra Axon*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA AXON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITRUS WORLD, INC. and FLORIDA'S NATURAL GROWERS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexandra Axon ("Plaintiff" or "Plaintiff Axon"), on behalf of herself and all other similarly situated persons, files this Class Action Complaint ("Complaint") against Florida's Natural Growers, Inc. and its parent company, Citrus World, Inc. (collectively, "Florida's Natural"), regarding the deceptive labeling, marketing, and sale of Florida's Natural-brand Orange

{00292921 }

Juice products (the "Products" as further defined below) as "Natural" despite the fact the products contain a synthetically created biocide. Plaintiff Axon alleges the following based upon information, belief, and the investigation of her counsel.

## NATURE OF THE ACTION

1. Florida's Natural sells several varieties of orange juice that claim to be "Natural" (the "Products"):

   a. Florida's Natural Orange Juice with No Pulp;

   b. Florida's Natural Orange Juice with Some Pulp;

   c. Florida's Natural Orange Juice with Most Pulp;

   d. Florida's Natural Orange Juice with Calcium and Vitamin D and No Pulp; and

   e. Florida's Natural Orange Juice with Calcium and Vitamin D and Some Pulp.

2. In reality, the Products are not "Natural" because the Products are highly processed and contain glyphosate, a synthetic biocide frequently used to kill weeds.

3. Glyphosate is not a naturally occurring substance and therefore, cannot be "Natural."

4. During the relevant period, Florida's Natural engaged in a uniform marketing and advertising program throughout New York and the rest of the United States representing that Florida's Natural orange juice is "Natural" when it is not. This representation is prominently displayed on the Products' labels.

5. As a direct result of Florida's Natural's deceptive statements concerning the nature of its orange juice, Plaintiff and the Class Members paid a premium for Florida's Natural's Products.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff Axon's claims pursuant to 28 U.S.C. § 1332(d) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from Florida's Natural's citizenship, and (c) the matter in controversy exceeds $5 million, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Alexandra Axon resides in Brooklyn, New York and is a citizen of the State of New York.

9. Defendant Citrus World, Inc. is a corporation incorporated under the laws of the State of Florida, with a principal place of business in Lake Wales, Florida.

10. Florida's Natural Growers, Inc. is a wholly-owned subsidiary of defendant Citrus World, Inc.

11. Defendant Florida's Natural Growers, Inc. is a corporation incorporated under the laws of the State of Florida, with a principal place of business in Lake Wales, Florida.

## FACTUAL ALLEGATIONS

**Florida's Natural's Statements Regarding**
**Florida's Natural Orange Juice Are False and Misleading**

12. Plaintiff Axon regularly purchased Florida's Natural Orange Juice at a Key Food Store located at 130 Seventh Avenue, Brooklyn, New York 11215 during the relevant class period for personal use. In making these purchases, Plaintiff Axon relied upon Florida's Natural's false and misleading statements that the product was "Natural."

13. Plaintiff Axon would not have purchased, or would not have paid a premium for, the Products had Florida's Natural not misrepresented the process by which their orange juice is made.

14. If Florida's Naturals misleading conduct were remedied, *i.e.,* if the Products were altered to conform to the representations on the labels, Plaintiff Axon would consider purchasing the Products again.

15. Florida's Natural is a leading producer of premium orange juice, marketing the Products under the Florida's Natural brand. Throughout the Class Period, the products have had labels that prominently state that the juice is "Natural." Examples of the Products' packaging during the relevant period are reproduced below.




16. In addition to the textual representations, the packaging features images of green leaves and orange blossoms as well as fresh-sliced oranges with juice visibly dripping from the fruit.

17. Reasonable consumers understand from the Products' labels that the juice is in fact natural and similar in result if consumers had squeezed the oranges themselves.

18. Florida's Natural's website describes a very simple process: "We just squeeze, flash-pasteurize and pour into freshness-saving cartons. Then we send our juice out into the world for you and your family to enjoy-no water, sugar or preservatives added. That's why our 100% pure, not-from-concentrate juices always have that straight-from-grove taste."[1]

19. All of these statements support the representations made on the products themselves: that the Products are "Natural."

20. Representative pictures that illustrate the purported difference between the Products, and competitors' products from Florida's Natural's website are included below for reference:

---

[1] *Florida's Natural: Not From Concentrate*, https://floridasnatural.com/our-juices/not-from-concentrate.php (last visited July 20, 2018).




**NOT FROM CONCENTRATE**          **FROM CONCENTRATE**

21. Florida's Natural's use of "Natural" and related imagery reinforces the impression that the Products are natural.

22. Claims that a product is "Natural" are material to a reasonable consumer.

23. Florida's Natural knows consumers seek out and are willing to pay more for natural products.

24. Florida's Natural's representations that the Products are "Natural" enables them to sell more of the Products and increase profits, which takes away market share from competing products.

**Florida's Natural Produces the Products with Glyphosate, a Synthetic Biocide.**

25. The Products are not natural. To the contrary, the Products contain glyphosate, a synthetic biocide.

26. Tests conducted by an independent laboratory using liquid chromatography mass spectrometry revealed the presence of glyphosate and aminomethylphosphonic acid ("AMPA"),

the main byproduct of glyphosate, resulting in effective glyphosate levels of 5.11 nanograms per milliliter. The effective glyphosate level is calculated according to the Food and Agriculture Method where total glyphosate residue is the sum of the weight of glyphosate plus 1.5 multiplied by the weight of its metabolite AMPA.

27. Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.

28. Glyphosate is derived from the amino acid glycine.

29. To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

30. Glyphosate is not "Natural."

31. On information and belief, glyphosate is not necessary for successful planting, growing, or harvesting of oranges; and is not a "Natural" method of growing or harvesting oranges.

32. Over the past several years, consumers have become increasingly conscious of the detrimental effects that glyphosate may have on human health and the environment.

33. Reasonable consumers do not expect glyphosate to be found in truly natural orange juice.

34. Florida's Natural makes claims regarding the "naturalness" of the Products to induce consumers to purchase their Products, to purchase more of their Products, and to prefer their Products over competing products.

35. Upon information and belief, Florida's Natural also utilizes a combination of deaeration, long-term storage, and flavor enhancement and blending to produce juice that is consistent from batch to batch.

36. No reasonable consumer would view orange juice processed in this way as "Natural."

**Florida's Natural Knows Its Representations are False.**

37. Nowhere on the Products' labels, on Florida's Natural's website, or in the Products' advertisements does Florida's Natural disclose to consumers the presence of glyphosate.

38. Instead, Florida's Natural represents in its labeling, marketing, and advertising that the Products are "Natural."

39. Florida's Natural knows these representations are false, and its labeling and marketing representations are deceptive and misleading to reasonable consumers.

40. Accordingly, Florida's Natural has engaged in a widespread marketing campaign to mislead consumers about the nature and quality of the Products during the applicable statute of limitations period (the "Class Period") in violation of New York consumer protection statutes and nationwide common law.

## CLASS ALLEGATIONS

41. Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff Axon brings this proposed class action on behalf of classes of individuals in the United States, as well as a sub-class of individuals in New York, defined as follows:

> **Nationwide Class:**
>
> All individuals who purchased the Products in the United States during the Class Period (the "Class").
>
> **New York Sub-Class:**
>
> All individuals who purchased the Products in the State of New York during the Class Period (the "Sub-Class").

42. Excluded from the above classes are all officers and employees of Florida's Natural and related entities, as well as the Judge to whom this case is assigned and any member of the Judge's immediate family.

43. Upon information and belief, the scope of these class definitions, including its temporal scope and any exclusions, may be further refined after discovery of Florida's Natural's records and/or third-party records.

44. The members of the Class and Sub-Class are so numerous that their joinder is impracticable.

45. The rights of Plaintiff Axon, and each Class Member, were violated in precisely the same manner by Florida's Natural's misleading and deceptive labeling, marketing, and advertising.

46. There are questions of law and fact common to the Classes as a whole. The common questions of law and fact predominate over any questions affecting only individual members of the Class and Sub-Class, and include, without limitation:

> a. whether Florida's Natural's labeling or advertising of the Products is false or misleading;
>
> b. whether a reasonable consumer would understand and believe from Florida's Natural's deceptive representations that the Products are natural when they are not;
>
> c. whether Florida's Natural's Products command a price premium due to its deceptions;
>
> d. whether by misconduct set forth in this Complaint, Florida's Natural has engaged in unfair and deceptive business practices with respect to the advertising, marketing, and sales of the Products;

e. whether Florida's Natural was unjustly enriched by the conduct alleged herein; and

f. whether, as a result of Florida's Natural's misconduct as alleged herein, Plaintiff and the other Class Members are entitled to restitution or injunctive relief.

47. Plaintiff Axon's claims are typical of the claims of the Class Members because Plaintiff Axon, like all Class Members, is a victim of Florida's Natural's wrongful actions, inaction, and omissions that caused the misleading and deceptive representations alleged herein and caused Plaintiff Axon and the other Class Members to suffer economic damages and other injury and harm.

48. Plaintiff Axon and her counsel will fairly and adequately represent the interests of the Class Members. Plaintiff Axon has no interests antagonistic to, or in conflict with, the other Class Members' interests. Plaintiff's counsel is highly experienced in the prosecution of complex commercial litigation, and consumer class actions.

49. A class action provides a fair and efficient method for adjudicating this controversy. The substantive claims of the representative Plaintiff and the Class Members are nearly identical and will require evidentiary proof of the same kind and application of the same law. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because Class Members number in the thousands, and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff Axon's and the Class Members' claims is manageable. Unless the Class is certified, Florida's Natural will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

51. Certification of the Class, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52. Certification of the Class also is appropriate under Fed. R. Civ. P. 23(b)(2), because Florida's Natural has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

53. Florida's Natural's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seek equitable remedies for the Class.

54. Florida's Natural's systemic policies and practices also make injunctive relief for the Class appropriate.

55. Absent a class action, Florida's Natural will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff Axon and the Class Members.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of New York General Business Law § 349)**
**(On Behalf of the New York Sub-Class)**

56. Plaintiff Axon repeats the allegations contained in the above paragraphs as if fully set forth herein.

57. Plaintiff Axon asserts this claim individually and on behalf of the New York Sub-Class.

58. Florida's Natural engaged in false and misleading marketing concerning the nature of the Products, representing that the Products were "Natural."

59. As alleged above, by advertising, marketing, distributing, or selling the Products to Plaintiff Axon and the other members of the New York Sub-Class, Florida's Natural engaged in, and continues to engage in, deceptive acts and practices.

60. Florida's Natural's conduct was intentional, willful, and knowingly done.

61. Florida's Natural's conduct was consumer-oriented and this conduct had broad impact on consumers at large.

62. Reasonable consumers would be misled by the Products' labeling.

63. As a result of Florida's Natural's conduct, Plaintiff Axon and the New York Sub-Class Members were injured through the purchase of the Products.

64. Florida's Natural's violation of GBL § 349 is ongoing.

65. By reason of the foregoing, Plaintiff Axon and the New York Sub-Class Members are entitled to: their actual damages or fifty dollars, whichever is greater; an increase in the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars; and their reasonable attorney's fees and costs.

66. Plaintiff Axon and the New York Sub-Class Members are also entitled to an injunction enjoining Florida's Natural's deceptive acts or practices.

**SECOND CAUSE OF ACTION**
**(Violation of New York General Business Law § 350)**
**(On Behalf of the New York Sub-Class)**

67. Plaintiff Axon repeats the allegations contained in the above paragraphs as if fully set forth herein.

68. Plaintiff Axon asserts this claim individually and on behalf of the New York Sub-Class.

69. Florida's Natural has engaged in false advertising in the conduct of a business, trade or commerce, or in the furnishing of any service in New York State.

70. Florida's Natural has engaged in false advertising concerning the Products, as described above.

71. GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect."

72. As fully alleged above, by advertising, marketing, distributing, labeling, and selling Florida's Natural Orange Juice to Plaintiff Axon and the New York Sub-Class Members as described above, Florida's Natural has engaged in, and continues to engage in, false advertising.

73. Plaintiff Axon and the New York Sub-Class Members further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New York Sub-Class Members will be irreparably harmed unless Florida's Natural's unlawful actions are enjoined, in that Florida's Natural will continue to falsely advertise the nature of the Products, as described above.

74. Therefore, Plaintiff Axon and the New York Sub-Class seek an order directing appropriate disclosures or disclaimers on the labeling or advertising of the Products.

75. Absent injunctive relief, Florida's Natural will continue to falsely advertise the Products as described above to the detriment of consumers.

76. Florida's Natural's conduct was intentional, willful, and knowingly done.

77. Florida's Natural's conduct is and was consumer-oriented and this conduct has had and continues to have broad impact on consumers at large.

78. As a result of Florida's Natural's conduct, Plaintiff Axon and the New York Sub-Class Members were injured through the purchase of the Products.

79. Florida's Natural's violation of GBL § 350 is ongoing.

80. By reason of the foregoing, Plaintiff Axon and the New York Sub-Class Members are entitled to: their actual damages or five hundred dollars, whichever is greater; an increase in the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars; and their reasonable attorney's fees and costs.

81. Plaintiff Axon and the New York Sub-Class Members are also entitled to an injunction enjoining Florida's Natural's false advertising

### **THIRD CAUSE OF ACTION**
### **(Breach of Express Warranty)**
### **(On Behalf of the Class)**

82. Plaintiff Axon repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

83. Plaintiff Axon brings this claim individually and on behalf of members of the Class.

84. Plaintiff Axon, and each member of the Class, formed a contract with Florida's Natural at the time Plaintiff Axon and the other Class members purchased the Products. The terms of that contract include the promises and affirmations of fact made by Florida's Natural on the packaging for the Products and through marketing and advertising, as described above.

85. This marketing and advertising constituted express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff Axon and Florida's Natural and between other members of the Class and Florida's Natural.

86. Florida's Natural created through its advertising express warranties that its Products are natural by making the affirmation of fact, and promising, that the Products were "Natural."

87. In addition, Florida's Natural made each of its above-described representations to induce Plaintiff Axon to rely on such representations, and she did so rely (and should be presumed to have relied) on Florida's Natural's representations as a material factor in her decision to purchase the Products.

88. All conditions precedent to Florida's Natural's liability under these contracts have been performed by Plaintiff Axon and the Class Members when they purchased the Products and used them as intended.

89. Despite Florida's Natural's express warranties about the natural condition of the Products and its contents, the Products contain glyphosate, making them unnatural.

90. Florida's Natural breached express warranties about its Products and the qualities of the Products because the Products did not conform to Florida's Natural's affirmations and promises to be natural.

91. As a proximate result of the breach of warranties by Florida's Natural, Plaintiff Axon and the Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Florida's Natural, and they were deprived of the benefit of the bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about the Products.

92. By reason of the foregoing, Plaintiff Axon and Class members are entitled to their actual damages in an amount to be determined at trial, together with interest thereon, punitive damages, and injunctive and/or equitable relief barring future warranty breaches.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)
### (On Behalf of the Class)

93. Plaintiff Axon repeats each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

94. Plaintiff Axon brings this claim individually and on behalf of members of the Class as an alternative to her Express Warranty Claim.

95. Plaintiff Axon and the Class conferred a benefit on Florida's Natural by purchasing the Products.

96. As set forth above, Florida's Natural engaged in fraudulent conduct that misrepresented the Products as "Natural" through the Products' labeling, marketing, and advertising.

97. As a result of Florida's Natural's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Florida's Natural was enriched, at the expense of Plaintiff Axon and the Class members, through the payment of the purchase price for Florida's Natural's Products.

98. Under the circumstances, it would be against equity and good conscience to permit Florida's Natural to retain the ill-gotten benefits that it received from Plaintiff Axon and the Class members in light of the fact that the Products purchased by Plaintiff Axon and the Class members were not what Florida's Natural purported it to be. Thus, it would be unjust or inequitable for

Florida's Natural to retain the benefit without restitution to Plaintiff Axon and the Class members for the monies paid to Florida's Natural for the Products.

99. By reason of the foregoing, Plaintiff Axon and Class members are entitled to their actual damages in an amount to be determined at trial, with interest thereon, and disgorgement of all amounts by which Florida's Natural has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Axon, individually and on behalf of all others similarly situated, seek judgment against Florida's Natural as follows:

a. for an order certifying the Class and New York Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and her attorneys as Class Counsel to represent the Class and Sub-Class members;

b. for an order declaring that Florida's Natural's conduct violates the statutes and common law referenced herein;

c. for an order finding in favor of the Plaintiff, the Class, and the New York Sub-Class on all counts asserted herein;

d. for an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

e. for an order disgorging all amounts by which Florida's Natural has been unjustly enriched;

f. for an order awarding pre-judgment and post-judgment interest on all amounts awarded;

g. for an order of restitution and all other forms of equitable monetary relief;

h. for declaratory and injunctive relief as pleaded or as the Court may deem proper;

i. for an order awarding Plaintiff, the Class, and New York Sub-Class their reasonable attorneys' fees and expenses and costs of suit; and

j. for an order awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: Brooklyn, New York
July 20, 2018

**RICHMAN LAW GROUP**

*/s/ Kim E. Richman*

Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect St.
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

D. Greg Blankinship
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Tel: (914) 298-3290
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

*Attorneys for Plaintiff and the Class*